COMMONWEALTH of Pennsylvania,
Appellee

v.

Sean M. KIRSCH, Appellant.

Superior Court of Pennsylvania.

Argued Nov. 1, 2006.
Filed Aug. 10, 2007.
Revised Sept. 25, 2007.

Wieslaw T. Niemoczynki, Public Defender, Stroudsburg, for appellant.

Elmer D. Christine, Jr., Asst. Dist. Atty., for Com., appellee.

BEFORE: BENDER, BOWES, JJ., and McEWEN, P.J.E.

OPINION BY BENDER, J.:

¶ 1 This is an appeal from a judgment of sentence imposed upon Appellant after he entered a plea of guilty to the offense of criminal trespass, a felony of the third degree. Appellant raises a single issue, whether the court erred in denying his presentence motion to withdraw his guilty plea. After careful review of the record, we vacate the judgment of sentence and remand for trial.

¶ 2 The present case arises out of a disruptive domestic incident that occurred on September 29, 2005, at the residence of Appellant's girlfriend, Debra Miller. Ms. Miller had maintained a relationship with Appellant prior to and at the time of the incident and continued to have a relationship with him throughout these proceedings. Apparently, at times the relationship between Appellant and Ms. Miller became violent. According to the affidavit supporting the criminal complaint, on the date in question, Appellant gained entry to Ms. Miller's residence by prying open a window. After gaining entry to her residence, Appellant found Ms. Miller and engaged her in a verbal and sometimes physical confrontation. Ms. Miller indicated to police that Appellant pushed her against a wall a few times during the approximately two-hour ordeal and also prevented her

from leaving the residence. Eventually, Appellant left the residence at Ms. Miller's request. The call to the police was not made by Ms. Miller but, rather, was apparently made by a concerned third party.

¶ 3 As a result of the incident, Appellant was charged with burglary, criminal trespass, simple assault and two counts of harassment. On February 16, 2006, Appellant entered a plea of guilty to the charge of criminal trespass and, in the process, acknowledged that on or about September 29, 2005, he entered the residence of Debra Miller when he was not licensed or privileged to do so.[1] Sentencing was scheduled for April 26, 2006. Appellant appeared on that date and, prior to imposition of sentence, expressed his desire to withdraw his guilty plea. As a result, the trial court continued the sentencing hearing to May 17, 2006, and directed Appellant to file a motion to withdraw his guilty plea on or before May 5, 2006. Appellant did file his petition to withdraw his guilty plea,[2] albeit tardily, and the hearing on Appellant's motion was heard as scheduled. Following that hearing, the trial court denied the request on May 17, 2006, stating that the court did not "find that there was a bold assertion of innocence" and that the Commonwealth would be substantially prejudiced if Appellant were allowed to withdraw his plea. The trial court then sentenced Appellant and the present appeal followed.[3]

¶ 4 In the present case, prior to the imposition of sentence, Appellant, having previously entered a plea of guilty, indicated his intention to withdraw his guilty plea. As a basis for that withdrawal, Appellant asserted that he was innocent of the charges to which he had pled guilty. At the hearing on Appellant's motion to withdraw guilty plea, Appellant indicated that he did not believe he was guilty of criminal trespass or burglary, that although he had gained entry to Ms. Miller's residence through a window he believed he "had every right to enter the premises legally," as he had lived and paid rent there for years. N.T. Hearing, 5/17/06, at 10–11. Appellant further indicated that he pled guilty to put the matter past him. *Id.* at 8. Despite the above, the trial court denied Appellant's motion to withdraw guilty plea. Appellant contends that the court erred in failing to grant his motion to withdraw plea, tendered prior to sentencing. We agree.

■ ¶ 5 While a criminal defendant may seek withdrawal of his/her guilty plea either prior to or after imposition of sentence, there is a significant difference in the law between the showing necessary to be entitled to withdrawal of the plea. After sentence has been imposed, a defendant must show that manifest injustice will result if he is not permitted to withdraw the plea. *Commonwealth v. Gunter,* 565 Pa. 79, 771 A.2d 767 (2001). However, prior to the imposition of sentence, a de-

1. It would appear that in exchange for the plea, the remaining charges were *nolle prossed.*

2. The written motion to withdraw guilty plea states, in relevant part:
   1. On February 17, 2006, the defendant pled guilty to the offense(s) of criminal trespass.
   2. On April 26, 2006, the defendant was scheduled to be sentenced by the Honorable Margherita Patti Worthington, J.
   3. The defendant wishes to withdraw his guilty plea because he is innocent of the charges lodged as confirmed by the alleged victim of the offense.
   Petition to Withdraw, filed May 16, 2006.

3. This Court notes, with displeasure, the failure of the Office of the District Attorney of Monroe County to file an appellate brief.

fendant should be permitted to withdraw his plea for "any fair and just reason." *Commonwealth v. Forbes,* 450 Pa. 185, 191, 299 A.2d 268, 271 (1973). In the seminal case of *Forbes,* our Supreme Court indicated an assertion of innocence qualified as a "fair and just" reason and would entitle a defendant to withdraw a plea of guilty unless substantial prejudice would inure to the Commonwealth upon the granting of the motion. Although it is apparently an extremely unpopular rule with prosecutors and trial courts, since *Forbes,* caselaw has continuously upheld an assertion of innocence as a fair and just reason for seeking the withdrawal of a guilty plea. *See Commonwealth v. Randolph,* 553 Pa. 224, 718 A.2d 1242 (1998).

¶ 6 The trial court apparently denied Appellant's motion to withdraw guilty plea because he had not "made a bold assertion of his innocence." Trial Court Opinion (T.C.O.), 7/17/06, at 4. However, such an assertion appears to be irrelevant as it relates to *Forbes.* Our Supreme Court weighed in on this matter in *Randolph,* stating:

Initially, we note that the Superior Court, under the guise of distinguishing this matter from *Forbes,* found significant Appellant's admission that he was not innocent of all the crimes alleged against him. The Superior Court concluded that such a statement does not amount to a declaration of innocence. We find this rationale to be spurious, given Appellant's unequivocal testimony at the initial hearing before the trial court that he was seeking to withdraw his pleas because he was "not guilty." See N.T. September 7, 1994 at 4. Moreover, even if Appellant had not made this initial declaration, given the liberal standard articulated in *Forbes* and the lack of prejudice to the Commonwealth, Appellant's admission that he was not innocent of all the crimes charged

should not have defeated his requested withdrawal. The Superior Court attempted to apply a new standard whereby participation in a plea colloquy results in a defendant's waiver of the rights established by this Court pursuant to *Forbes.*

*Randolph,* 553 Pa. at 230, 718 A.2d at 1244–1245.

¶ 7 Similarly, in *Commonwealth v. Clinger,* 833 A.2d 792 (Pa.Super.2003), a defendant's response that "No, I feel that I didn't," to the question whether he had committed criminal conspiracy was deemed a sufficient expression of innocence for *Forbes* purposes despite the Commonwealth's arguments to the contrary. With respect to this issue, we stated:

While it is obvious from this exchange that, as the Commonwealth argues, appellant ultimately retreated from his initial assertion of innocence and admitted culpability, it is equally obvious from a review of the entire record that appellant, given an opportunity to reflect upon his plea, refused to acknowledge that at the time of the assault he possessed the mental state that would justify a conviction for the crime of conspiracy to commit third-degree murder.

*Id.* at 795.

¶ 8 Briefly stated, the trial court's belief that a defendant must make "a bold assertion of innocence," N.T. Hearing, at 17, is erroneous. Moreover, we must conclude that Appellant's indications that he did not believe he was guilty of the offenses, that he believed at the time that he was licensed to enter the residence and his assertion that he pled guilty to "put the matter behind him," are sufficient to satisfy *Forbes* and its progeny.

¶ 9 The trial court's opinion further appears to suggest that allowing a with-

drawal of a plea on an assertion of innocence after acknowledging guilt during the colloquy is incongruous. The court states: "The statements a defendant makes at a guilty plea colloquy hold a great deal of weight. If the defendant admits at that time that he committed the crimes in question, it will be extremely difficult for him to profess his innocence at a later time." T.C.O. at 4. The trial court's opinion seems to overlook the fact that this incongruity was, virtually by necessity, also present in the many prior cases involving an assertion of innocence yet did not prevent the *Forbes* rule from coming into creation. In fact, since it is necessary for a criminal defendant to acknowledge his guilt during a guilty plea colloquy prior to the court's acceptance of a plea, such an incongruity will necessarily be present in all cases where an assertion of innocence is the basis for withdrawing a guilty plea. Nevertheless, our Supreme Court has not found what is essentially a recantation of one's profession of guilt as a basis for denying a petition to withdraw under these circumstances.[4] Indeed, in *Randolph*, our Supreme Court reversed the denial of a motion to withdraw guilty plea over comments of the trial court very similar to those made here. In *Randolph*, the trial court denied Randolph's motion to withdraw plea stating:

I don't think that there's any valid case here to withdraw the plea. I remember on July 25 that you were in good health. You admitted these things, and I—un-

less you have some other reason before I proceed with the sentencing. Is there any other reason? All right, I'm denying the motion to withdraw the guilty plea and we'll proceed to sentencing. *Randolph*, 553 Pa. at 226, 718 A.2d at 1243. Thus, it is clear that acknowledging guilt at the plea colloquy does not prevent the later withdrawal upon a later inconsistent assertion of innocence.

∎∎∎∎∎∎ ¶ 10 The trial court further concluded that a second basis existed for denying Appellant's motion to withdraw guilty plea: that prejudice would inure to the Commonwealth if the motion were granted. Our research reveals that there exists little case law explaining what constitutes prejudice in the withdrawal of a guilty plea context. Nevertheless, despite the dearth of caselaw, it would seem that prejudice would require a showing that due to events occurring after the plea was entered, the Commonwealth is placed in a worse position than it would have been had trial taken place as scheduled.[5] This follows from the fact that the consequence of granting the motion is to put the parties back in the pre-trial stage of proceedings. This further follows from the logical proposition that prejudice cannot be equated with the Commonwealth being made to do something it was already obligated to do prior to the entry of the plea.

¶ 11 To demonstrate prejudice here, the trial court points to the fact that the victim, who, as pointed out above, was at the

---

**4.** For instance, in *Randolph*, Randolph, after his capture, admitted to committing 13 burglaries, was charged accordingly and proceeded to enter a plea of guilty to, *inter alia*, 13 counts of burglary. During his guilty plea colloquy, Randolph stipulated that the affidavit of probable cause could be accepted as a factual basis for the plea as to each charge. Subsequently, Randolph indicated his desire to withdraw his plea of guilty and, in support thereof, Randolph indicated that he had committed no more than four or five of the bur-

glaries admitted. Despite this reversal of position, our Supreme Court reversed this Court when we affirmed the trial court's denial of Randolph's motion to withdraw guilty plea.

**5.** Along these lines, in *Commonwealth v. Campbell*, 309 Pa.Super. 214, 455 A.2d 126, 128 (1983), we described the prejudice standard as being satisfied "where the prosecution substantially relies upon the plea to its detriment."

time of the incident and who has since remained in a relationship with Appellant, has apparently become a reluctant witness since Appellant's arrest and the preliminary hearing. However, it is noteworthy that the victim has not become unavailable. There is no indication that Ms. Miller cannot be subpoenaed and put on the witness stand. Moreover, if her testimony differs from statements and/or testimony previously given, she can be impeached with those statements/testimony and those inconsistent statements can be used as substantive evidence sufficient to convict. *Commonwealth v. Brady*, 510 Pa. 123, 507 A.2d 66 (1986). This is not a situation where in the interim a witness has died or left the jurisdiction, or where key evidence has been inadvertently lost or destroyed.

¶ 12 More importantly, there is no indication that the witness's reluctance came **after** the time scheduled for trial. Indeed, Ms. Miller testified that prior to the entry of Appellant's plea she attempted to contact the DA's office and police to inform them that aspects of the incident had been characterized much broader than what had occurred. N.T. Hearing, at 4. According to Ms. Miller, at the time Appellant accepted the plea, Ms. Miller "told him he was insane for taking that plea." *Id.* at 5.[6] Thus, the victim's reluctance, if truly present, would have been a problem for the Commonwealth had they gone to trial in the first place. The Assistant District Attorney admits as much when he contended, "[t]he only prejudice now to the Commonwealth would be the victim and whether her testimony has changed. I can't say at this point what she would have testified to if there had been a trial in a normal course of events." *Id.* at 16.

¶ 13 Assuming for the moment that a victim's later reluctance can constitute prejudice for purposes of withdrawing a plea, it would follow logically that for the prejudice to be related to the withdrawal of the plea, the change of heart would have

---

6. At the hearing on Appellant's motion to withdraw his guilty plea, the following exchange occurred between Appellant's attorney and the victim, Debra Miller:

Q. Now you realize [Appellant] has entered a guilty plea in this case is that correct?

A. Yes.

Q. Now, the circumstances of this, this plea was entered as far as you're understanding, just to put this matter past him and move on with your lives?

A. Yes, I believe. So, he didn't realize exactly.

Q. Let me pick up on that. *Prior to the entry of the guilty plea, had you tried to contact authorities about your concerns that certain events were characterized much more broader, if you will, than had occurred?*

A. *Yes, I did.*

Q. What efforts did you make? Tell the court.

A. I spoke to the state police. I tried to speak to the DA's office. They wouldn't accept my calls. They sent me to witness/victim. They told me they weren't able to handle it. That wasn't their responsibility. I contacted—I don't remember if I spoke directly to you or your office, and they explained to me that I needed to speak to the DA.

Q. Do you remember speaking to me specifically about that subject? I told you that you needed to talk to the DA?

A. Yes.

Q. I take it those efforts were unsuccessful?

A. They were completely unsuccessful. She wouldn't listen to me when I tried to speak to her at all.

Q. Has Mr. Kirsch threatened you in any way to appear today or to make those efforts to discuss these matters with authorities prior to the entry of his guilty plea?

A. No, as soon as this happened, it was my idea. I told him he was insane for taking that plea in the first place.

Q. Was it you who started the calls to the authorities to start this?

A. They came from a third party.

N.T. Hearing, at 3–5 (emphasis supplied).

had to occur after the time scheduled for trial.[7] Apparently, in the view of the trial court, the prejudice inuring to the Commonwealth, should Appellant be permitted to withdraw his guilty plea, is the fact that the Commonwealth will have to prove its case. But this difficulty is not related to the entry of the plea and the resulting delay caused by accepting and then withdrawing that plea. The prejudice to the Commonwealth is the simple negation of a "good break" it received when Appellant opted to plead guilty thereby relieving the Commonwealth from going to trial with a case that may very well have proven to be problematic. In our opinion, this circumstance does not satisfy the prejudice requirement.

■ ¶ 14 In short, while it may not be popular, the *Forbes* rule exists and we are duty-bound to apply that rule. Here, the Commonwealth has presented nothing but the standard objections to the rule and the trial court has offered nothing more than a misstatement of the law and a finding of prejudice that does not withstand logical scrutiny. As such, we believe the court erred in denying Appellant's motion to withdraw guilty plea. Consequently, Appellant's judgment of sentence will be vacated and the matter remanded for trial.

¶ 15 Judgment of sentence vacated, remanded for new trial. Jurisdiction relinquished.

¶ 16 P.J.E. McEwen files a concurring statement.

Concurring Statement by McEWEN, P.J.E.:

¶ 1 The author of the persuasive Opinion of the Majority has provided a perceptive expression of rationale, and I agree that the decisions of *Commonwealth v. Forbes,* 450 Pa. 185, 299 A.2d 268 (1973) and *Commonwealth v. Randolph,* 553 Pa. 224, 718 A.2d 1242 (1998), require this Court to conclude that appellant must be permitted to withdraw his guilty plea. *See generally: Commonwealth v. Rish,* 414 Pa.Super. 220, 606 A.2d 946 (1992). I write separately, however, to reiterate what are now but dim echoes of my conviction that a mere assertion of innocence, such as was presented in this case, should not by itself constitute a fair and just reason to withdraw a guilty plea. *See: Commonwealth v. Rish, id.* at 948 (McEwen, J., concurring); *Commonwealth v. Cole,* 387 Pa.Super. 328, 564 A.2d 203, 208 (1989) (McEwen, J., concurring) ("[A] presentence assertion of innocence *may* compose the required 'fair and just reason' provided that the totality of circumstances reflected by the record does not establish otherwise." [emphasis supplied]). Thus it is that I agree with the expression of this Court in *Commonwealth v. Dicken,* 895 A.2d 50, 52 (Pa.Super. 2006), *appeal denied,* 589 Pa. 718, 907 A.2d 1101 (2006), that "a defendant's bald assertion of inno-

---

7. *Accord Commonwealth v. Middleton,* 504 Pa. 352, 473 A.2d 1358 (1984), (the possibility that witnesses may become uncooperative or suffer memory lapses in a future proceeding is an insufficient basis for the finding of prejudice). *Cf. Commonwealth v. Carr,* 375 Pa.Super. 168, 543 A.2d 1232, 1234 (1988), where we stated:

Whether intentional or not, the delays occasioned by the plea and subsequent motions for continuances by appellant resulted in a shift in family sympathies from the child victim to appellant. Though undoubtedly available in a technical sense, the reluctance of family members to testify in a way which would cause the incarceration of appellant is evident, and would have significantly impaired the prosecution of this case. Moreover, the eight month delay would undoubtedly have dulled the five year old child victim's recall of events, even in the absence of the subtle influences resulting from the intra-familial nature of the assault. Thus, substantial prejudice was present.

cence will not constitute a fair and just reason for allowing withdrawal of guilty plea." [8]

¶ 2 The facts of the present record do not, in my view, impel the conclusion that fairness and justice are served by permitting appellant to withdraw his plea of guilty. Appellant was aware, *prior* to the entry of his plea of guilty, that the victim was making efforts to contact the authorities to amend the statement she had given to the State Police, but he proceeded, nonetheless, to declare by his plea that he was guilty of criminal trespass. Moreover, the subsequent request of appellant to withdraw his plea, while ostensibly based upon his assertion of innocence, was in fact grounded upon his claim that when he pleaded guilty to trespass he "didn't really know the severity of" [9] the charge to which he had pleaded guilty—an assertion vastly different from a claim that he did not know the substance of the charge. Thus, as I see it, appellant's assertion of innocence was but a contrived ploy, tantamount to the incantation of "magic words," all of which, in my view, should fall short of a fair and just reason to warrant the withdrawal of the guilty plea.

¶ 3 In any event, bound by the prevailing legal standards for presentence withdrawal of a guilty plea, I concur in the decision to vacate the judgment of sentence and remand for trial.

---

8. It bears mention that the Majority, in support of its conclusion that appellant's assertion of innocence does constitute a fair and just reason for withdrawal of the plea, cites the decision of this Court in *Commonwealth v. Clinger*, 833 A.2d 792 (Pa.Super. 2003), which was penned by the author of this Concurring Statement. However, the *Clinger* defendant's assertion of innocence to the charge of conspiracy to commit third degree murder composed a "fair and just reason" for withdrawal of the guilty plea because under the law *it is impossible to commit* conspiracy to commit third degree murder. *Clinger, supra,* 833 A.2d at 795. Therefore, the defendant obviously "pleaded guilty to an offense that did not exist and, therefore, a crime that did not occur," *id.*, which, of course, rendered the guilty plea void ab initio.

9. N.T., May 17, 2006, p. 12.